1439.6.2014.39.37. Inhalation Models Inc. Oprah Levine, David Levine, D.J. Turkle, Medex Cardio Pulmonary Inc. D.J. Turkle, AST, D.J. Turkle, F.C.T. D.J. Turkle, F.C.T. Good morning Your Honors. Good morning. May it please the Court, Counsel, I'm Judge Schief here today on behalf of the appellates. I was engaged several months after Judge Smith rendered his summary judgment decision in this case to try to unwind what I believe Judge Watson aptly called a Gordian Knot of a legal problem. There's nobody more desirous of having this case resolved quickly, promptly, and without just delay. My concern is that the certification in this case leaves this Court without appellate jurisdiction and that we're going to be back here again arguing different issues and this does not bode well for an expeditious trial and if you let me explain why. Under Curtis Wright we have two requirements. One, that there has to be one claim and that is the certified claims have to be claims that are separate and distinct from the non-certified claims. We don't have that here, Your Honors. The fact that the successor liability claim was dismissed on summary judgment and not certified on appeal like the merger claim was certified for appeal renders a whole host of problems that will bring us back here yet another day. Let me explain. A key factual question that has to be decided at trial is which entity was holding the company, the entity that acquired the parent company of MedEx-CP because that's very important. Because if it was in fact MedEx-CP that was using the equipment, something to be determined at trial, then the merger analysis doesn't apply. It's moot. Whatever you decide with respect to the merger issue is not going to be an issue if the court in fact determines at trial that the equipment was being used by MedEx-CP and not Smiths. On the other hand, if it was Smiths that was using the equipment, then we do have a successor liability issue despite the fact that the courts did not certify that for an immediate appeal like it did the merger issue. The successor issue is broader than was there a merger or assignment that somehow makes Smiths liable under the contract. I thought that the successor issue was certified in part and not in part and only with respect to the merger issue. Am I wrong on that? Judge Morris, my understanding is that the successor issue was not certified at all unless implicitly in the merger issue, which Judge Smith ruled was the basis for dismissing the successor claim. The problem with that analysis is that in addition to the merger aspect of the successor liability, if Smiths was actually using the equipment and was actually assuming the responsibility for that contract for not giving the information, for not rendering an account, and not paying the monies that were owed for the production that was the purchase price of this contract. Yes, Your Honor. There certainly may be questions about the wisdom of doing a 54B certification, but in terms of that area, we generally use the abuse of discretion standard to review, correct? Your Honor, I believe you use the de novo standard of review. I don't have a case right at my fingertips, but this federal court jurisdiction is not a matter of discretion. Federal court jurisdiction is a matter of law. Does it exist or doesn't it exist? I was part of the GenCorp acquisition case many, many years ago and about saw a panel come over the bench because of the parties trying to construct federal court jurisdiction on an immediately appealable basis, where that court, much like this court, should not have done so. I'm fearful that when we go back to court, we're going to try a case and we're going to have an appeal no matter what. Somebody's going to lose the SEC dispute about whether there was a waiver or somehow collateral estoppel or judicial estoppel based on SEC statements made by appellees to the SEC. There's going to be a dispute about whether or not, irrespective of a merger as a matter of law, whether or not Smith's was the entity that was actually operating the equipment or whether it was MedEx CP. Those issues are going to come back, and if they don't and we find out that MedEx CP was using the equipment, then this court's ruling on whether there was a merger as a matter of law is irrelevant. One of the factors under the Curtis Wright test is, are there situations that can occur that would moot the necessity for this court to have to render the decision that it's about to render? A major point of yours, both now and in the briefing, is that the 54B certification was not proper. That's correct, Your Honor. If we were to decide that it is proper, then the question is whether we should affirm or not vis-a-vis the issues on which the district court ruled. Maybe that will help us also in deciding whether or not the 54B certification was proper. There are two issues that were certified, and Judge Moore, with your observation that perhaps the successor liability subsumed into the merger issue, I don't think that that was clear. But even though it might be, it doesn't subsume the entire successor liability issue as I've just explained. The issue here in terms of a merger and where Judge Smith got it wrong, I respectfully suggest, is that he said, what my clients failed to recognize is that after the merger, MedEx CP became a Smith Company entity. And I respectfully suggest that that's just wrong as a matter of law. The State of Ohio is very clear, as I think across the country, corporations are separate and distinct from their shareholders, their individual entities. A parent corporation is separate and distinct from its subsidiary, and there was no magical way short of MedEx CP being merged into one of these entities at the same time, which all the the merger. So we're proceeding from the premise that we've got separate and distinct legal entities here. The only way that Smiths could even be using the equipment, if it was, would have been an assignment to that entity that happened outside the context of a legal merger, and that's the assignment that's prohibited by the contract. Yes, Judge? I thought you were going to ask a question. Sometimes I must do that, but I don't mean to. I'm sorry. You might have done that on behalf of me. And it's really a request that you help me, because if I understand what you said in response to questions from Judge Moore, you believe certification was given in error, and that would be an abusive discretion standard. But if I understood the balance of what you said so far, it's the de novo review of the motion for summary judgment that you believe, if undertaken, would reveal what you respectfully categorize as Judge Smith's error. And if I'm wrong, you'll have to straighten me out. And I apologize for being unclear. I believe that a decision about whether or not to certify a case pursuant to Rule 54B is not subject to an abusive discretion standard, because after all, we're talking about federal jurisdiction in this court. I don't think a common pleas court, or excuse me, a trial judge, a district court judge, can, within his or her discretion, certify a case that is, even within their discretion, one that, if you looked at it as a matter of law, should not have been certified. And let's assume we agree on that. So the second part of my question is the most important. And I think, and you'll tell me if I'm right, that you're arguing a de novo review of the summary judgment findings would reveal that you're correct, your client's position is correct. That's correct. That's correct, Your Honor. I didn't get that. Is correct with respect to what? Certification or the granting of summary judgment? I believe de novo applies to both judgments. Well, yeah, we know it belongs to summary judgment. So you only are talking about the summary judgment. You think both are matters of law. I think both are matters of law, because I don't think, again, that a trial judge or district court judge has the ability, within their discretion, to confer federal court jurisdiction. There's a test that I think that this court... Well, it already has federal court jurisdiction. To this court, Your Honor. Yeah, but I mean, so appellatures, to send it on to this court, where's the great harm in that? The great harm is... If they misjudge that it should come here... The great harm is, for all the factors in the case, the Curtis Wright case, for example, we're going to be back here. The finality. I think both Curtis Wright and Lowry v. Federal Express, which is a Sixth Circuit case, both of them suggested it's an abuse of discretion standard. But in any event, I think we should get to the merits, which is the summary judgment that was surprised... I thought that the district court says that this was a merger. It was not an assignment, and therefore your client loses on that particular part of Count 2, or Claim 2, of the complaint. That's exactly what Judge Smith did, Your Honor, and that's what I think was wrong as a matter of law. Because you're saying there's evidence that it wasn't a merger? All the evidence is that MedExCP, the entity that had the contract with my clients, never merged into anybody. They remain a separate and distinct legal entity, and therein lies the fundamental legal flaw in the analysis. Had Smith acquired a company that was merged into it that had this contract, that might have been a different question. The Ohio Revised Code and Judge Smith's analysis might hold true, but that's not this case. What we have is a company that remains separate and distinct that could not, as a matter of law, have had its assets, including this contract, merged into an entity with which it wasn't merged into, but for an assignment, not a merger. Now, another claim that summary judgment was granted on, I believe, is the oral contract claim. That's right, Your Honor. That's a factual issue. I respectfully submit that that should have been left to the trier fact. Judge Smith concluded that the supposed offer and acceptance was too vague in the delta between the we're going to get you $7 to $10 million, which was the payout amount determined or discussed between Dominic Arena and my client, Walter Levine, prior to entering into this whole arrangement. I respectfully suggest that that is a factual issue, that the fact finder should have a chance to review and should not be decided, as a matter of law, about whether, in fact, there was a meeting of the mind between these two individuals in regard to the oral agreement. And is there any other issue, then, that you've appealed? You've appealed the granting of summary judgment on the oral contract, the granting of summary judgment on the merger. Well, those were the two that were certified. If this court does look at this certification issue de novo, then I suggested, if we're going to look at this, let's look at all the issues so we don't have piecemeal trials, so that we don't have piecemeal appeals. Is there any case that supports that position of yours? I wanted it to be this one, Your Honor. Because I think it makes sense. But the restriction is limited in the federal. That's correct. That's correct. I see I've about used my time. I will reserve the rest. Did you reserve time for me? Yes, I did. Thank you. Good morning. May it please the Court, I'm Theodore Becker on behalf of the defendant, Medix CP, Medix Cardiopulmonary, Inc., CP, and Smith's ASD, Inc. At the outset, I think there are a few things I can clear up. First of all, Judge Watson did dismiss or did certify the related portions of count three of IPI's third amended complaint, which is the successor liability claim. And that's on page 17 of document 313 of Judge Watson's certification order of August 18th of 2014. What did that clear up? It cleared up... No, Mr. Schieff argued that the successor liability claim was not certified for appeal to this Court. And actually, it was because Judge Watson... Is that in the case that was already decided by this Court by another panel? No, it's the... Smith's ASD, Inc., that's the first time that Smith's came into this case as a party. And their only claim against Smith's is successor liability for the claims against Medix CP. So, what Judge Watson said was, having considered the judicial administrative interest as well as the equities involved, the Court finds no just reason to delay an appeal from Judge Smith's grant of summary judgment on the anti-assignment... I'm sorry, on IPI's breach of oral contract claim, that's count one, and breach of written contract based on the anti-assignment provisions, that's count two, and the related portions of count three of IPI's third amended complaint. So, Judge Watson ruled that those were merely derivative of counts one and counts two, and they have been certified for appeal. So, one thing that that paragraph does on page 17 of the order, it's granting Rule 54B certification on only part of count two, the breach of written contract claim. And on the surface, that seems to me to be an unwise use of 54B certification. If the plaintiff has a broad breach of contract claim that involves, say, hypothetically, ten different items that show a breach of contract hypothetically, why should a district court certify one of those breach of contract claims for us to have to decide? We could have piecemeal appeals. We shouldn't really be involved with this case until the district court has finally decided the whole case. That's the theory that I want you to respond to. Certainly, Judge Moore. Of course, we always have to deal with the complaints as plaintiffs draft them. And it would have been, with all due respect, I think, more artful drafting if the various claims that are encompassed in count two would have been delineated as separate counts. However, they chose to put some claims together. The reason that I think Judge Watson's certification and the reason I think that Judge Smith's summary judgment on what we call the anti-assignment breach claim are proper is because they're separate and distinct from everything else that's in count two. The rest of count two has to do with moving of equipment, primarily has to do with the production lease, one single document. But the finite issue, the legal issue of whether or not there was an assignment and whether that assignment clause, if the assignment clause even is read the way that the plaintiff reads it, was breached, is truly a distinct claim. And the operative, there are very few operative facts. It's a question of law, and that's how Judge Smith decided it. But whatever operative facts that might apply to the so-called breach of contract, the anti-assignment claim that's part of count two, don't have anything else to do with a very fact-rich dispute on the remainder of who did what to whom. But why is there any need for an immediate appeal of this issue? Well, the reason why is because in the pretrial, when this case was reassigned from Judge Smith to Judge Watson, the plaintiff's counsels admitted that the value of the oral contract claim, count one, and the claim of the breach of the anti-assignment clause, count two, were their quote-unquote big money claims, $10 million is what they claim, whereas the remainder of the count two claims have a value of $50,000. And the plaintiffs also said that they will appeal either way. At the end of the case, they will appeal Judge Smith's summary judgment on counts one on the oral contract and the anti-assignment claim. The parties were discussing settlements, and I won't go into the details, but we actually asked a question of Judge Watson to help guide the settlement discussions, and that was, how do we deal, can we deal with a settlement that basically asks the court to dismiss a part of count two and that be a condition of the settlement? Judge Watson came back and said there's case law, and in fact the plaintiffs also objected and said there's case law that would prevent us from doing that. And so he actually entered a memorandum to us, to counsel, that said he would entertain a Rule 54B certification because he thinks it would advance the cause of settlement, whether we know if we're dealing with a $10 million lawsuit or a $50,000 lawsuit. And under those situations, I think that Judge Watson was correct, and I think that as the trial judge, by the way, I agree Judge Moore, it is an abuse of discretion standard. It has to do with the administration of the case, which is something that the trial judge has to deal with. It seems bizarre, though, to say that they can have an appeal because it will facilitate settlement. So we'll get the poor appeals court spending a lot of time on this case so that then the parties can go back in district court and decide how much they want to settle this for. When settlements usually involve some kind of risk evaluation, how much do you think you're going to win, what's the likelihood of winning and all that, and instead, here you're, I don't remember the economic terminology from when I was an economics major, but you're putting off all the costs on the Court of Appeals to have a partial judgment in a case. Well, Your Honor, Judge Moore, that's how it arose, but that's actually not the reason that supports the certification. The reason is that the oral contract claim and the anti-assignment claim have completely separate and distinct facts. We're going to have to go through two trials if we don't know what's going to happen with the oral contract claim, because we're not going to be trying the oral contract claim and we're not going to be trying the anti-assignment clause breach claim in the trial that Judge Wesson was about to have. And virtually on the eve of that trial, he'd set a trial date for the remaining claims. He decided that in the interest of judicial economy, it's going to be a big waste of the judge's time, the court's time, and of course the party's time and a huge expense to try having a complete trial with many of the same witnesses, most of whom come from elsewhere, and have the trial on just where was the machinery moved and how was it moved. That actually could be a longer trial than the trial on the claims that have been dismissed. So if we could get to the part of count two that your opponent spoke about. He says there was no merger and therefore the summary judgment was mistakenly granted. Yes, we disagree with that. Of course, I think he agrees there was a merger. I think what he's basically saying is that the merger was an assignment by operation of law. I interpreted his comments here to be that MedEx was not merged into Smiths, and I know that there are several Smiths and several other things, but you could address that. MedEx cardiopulmonary didn't merge into anybody. It's still an existing entity. What happened was the parent of MedEx CP was merged with a Smiths entity. And actually on page three of Judge Smith's opinion, there's a very succinct, much better than I ever explained it before he wrote the opinion, because we have a tendency, and I'm guilty of this, to overcomplicate things. He says in March 2005, MedVest Holdings Corporation, a holding company that owned MedEx Inc., which in turn owned MedEx CP, the separate corporate entity that acquired the subsidiary of Smiths Medical Holdco and the Forest Acquisition Company. As a result of this merger, MedEx CP remained a wholly owned subsidiary of MedEx Inc., which became a subsidiary of Smiths Holdco. So we have a chart in our brief that sets this out. It's a diagram on page 11. And all we have here is we have two parent companies who each own subsidiaries, and they decide to merge with each other. Smiths is the surviving company, and it's now the parent of all the subsidiaries, to the extent that those subsidiaries remain corporations and operating companies, which MedEx CP did. That's a merger. There's no evidence of any assignment ever being executed. And in fact, no assignment ever was necessary because the case law we've cited and the case law that Judge Smith relied on shows that when you have a merger, that's not an assignment. It's just that everything that the subsidiary owns is now owned by the parent because the parent owns the subsidiary. And was there discovery as to whether there were any actual assignment documents? Oh, yes. There's been extensive discovery in this case. It's mind-boggling. So the only theory that your opponents were asserting that would suggest that there was an assignment was because of the merger that occurred, and the merger was layers up above your particular client, which is MedEx CP. That's correct, Judge Moore. And that's why it's solely an issue of law, and that's how Judge Smith decided it, that the merger is simply not an assignment, and there was no assignment as a matter of fact. I think it's undisputed there was no actual assignment. It's just an argument that the merger was a de jure assignment. With respect to the oral contract issue, your opponent argues that it's a fact question. Was this promise to pay between $7 and $10 million, I guess it was? We respectfully disagree. We think the creation of a contract, the existence of a contract, is a matter of law. The breach or the enforcement may be a matter of fact, depending on the case. But the mutual insurance case, which clearly shows it's a matter of law. And all that Judge Smith did was look at the actual evidence, most of which comes from the mouth of Mr. Walter Levine, who was the president of the plaintiff, IPI. And although he made an attempt to change it by a declaration after we filed our motion for summary judgment, Mr. Levine admitted that he knew that any discussions between he and Mr. Arena were subject to approval at a higher level. That approval never came. He admitted that. And that alone as a matter of law shows that there never was the creation of a contract. Second, Judge Smith found that you just can't have a contract creation where there's no testimonial. There's a few other things that are lacking in all of the evidence that the plaintiff put forth with regard to the contract. Who are the parties? It's not even clear from the testimony if it's a contract with Mr. Levine, because he was the one talking about threatening to resign and exposing whatever he thought he was going to expose. Or if it was a contract with IPI, it's not clear who the other party was on the other side of the contract. As I said, it's not clear what the amount was. So there's so many deficiencies in this contract as it was pled and as they attempted to prove it, that there simply was no contract created. Thank you. And it was oral. Are there any further questions? I'll sum up then. The red light has miraculously gone off. Then I won't sum up. My summary is we ask you to affirm Judge Smith's summary judgment on counts 1, the assignment claim in count 2, or the breach of the anti-assignment clause rather, and the successor liability aspects of count 3 that are derivative of those two. And we ask you to grant our motion to dismiss the appeal, meaning that all of the other things, parties who were appealing who were never parties below to the particular claims, and claims that were not certified by Judge Watson, we don't believe should be part of this appeal, and we believe our motion to dismiss the appeal should be granted. Thank you. Briefly, Your Honors, on page 7 of our brief, we too have a diagram that I think aptly depicts what Judge Smith found in the arrangement. Do the diagrams disagree? I don't think so. The point being, as counsel has just admitted, Medex CP never merged into anybody. Medex CP remains still to this day a wholly separate and distinct legal entity. If its parent company acquired anything as a result of the merger, it acquired the stock... It is owned by no one different than... It's still owned by Medex, which has now been merged into Smith's. That's how you figure that it's still an independent entity? Well, it's legally separate and distinct. But I mean, a lot of companies that are wholly owned, they still exist, and they have corporate articles of incorporation, and they operate separately, but does that mean they're owned by someone else? I think the point, Your Honor, that I'm trying to make, perhaps not so well, is it doesn't matter who owns them, it's that they remain a stand-alone corporation, that somebody owns their stock as a result of the merger. Okay, but for purposes of saying it's an assignment, the contract said thou shalt not assign. Right. And does assign, does it become a synonym with merge? Now I understand the problem. And I think if we go back to Judge Smith's decision, one of the issues there in regard to, and I think it's on pages 30 to 32, there's a discussion of why IPI thought that there must have been an assignment. And in that discussion, Judge Smith, my client, suggests he saw the equipment being used by Smiths. And so the assumption was, since MedEx CP was not merged into Smiths, that there must have been a permission for Smiths to be using that equipment, which is an assignment, might not be in paper, but is permission to use it in violation of the contract. The factual question there, and one that's going to have to be decided, regardless of what happens, is who was actually using that equipment? Was it MedEx CP? So the idea, your theory is you were seeking to protect the, I call it the science, or the equipment, which, I don't know. But in any event, that was captured in an anti-merger, anti-assignment, anti-use, anti-right? Am I right about that? And I know you're over time, but may he answer, please? I'm not suggesting that there was an anti-merger prohibition in that assignment clause. The point is there was no merger for that issue to even come up. That's where Judge Smith got it wrong. There was no merger of MedEx CP into anybody, so that for the anti-assignment... It could be owned by another entity. The surviving parent is someone different. They have a surviving parent. They do. And that surviving parent now owns stock in MedEx CP. That's what they received as a result of their ownership interest in MedEx CP. They did not receive because MedEx CP that owns the equipment that is a party to the contract was not a party to the merger. The only thing that the parent company got as a result of the merger was the benefit of having stock ownership in MedEx CP. But that doesn't mean that they've melded into one entity for purposes of a merger. So you've referred us to pages 30 to 32 of Judge Smith's opinion. What specifically has he done wrong there? What he has done wrong is that there was testimony from my client and I think also from one of... You'll have to forgive me. I wasn't a part of this grueling discovery juggernaut, but there was testimony that Smith's was using the equipment to make product that was part of the MedEx CP contract. And Judge Smith concluded, well of course they're using the equipment because after the merger they were a Smith entity. And that's where he got it wrong because they were never merged into a Smith's entity. They remain to this day a separate and distinct legal company which is fundamental... For which no one else has any rights to touch anything. Even the parent or its offshoots. That's why you have separate and distinct legal entities. If they're not treating the corporations as separate and distinct, then there may be another problem. But there's no evidence here that there was anyone acting outside the corporate scope. And if I could just indulge one more thing. I know that I'm beyond my time. Just on this topic, this particular thing of pages 30 to 32 of Judge Smith. No, with that then your honors, I request that you send the case back as is to have Judge Watson conduct a trial so all the facts can be sorted out that answer some of these dueling issues that we've talked about. And that this case can come to this court one time with all the issues framed and ready for trial. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case please?